## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROYAL MERCHANT HOLDINGS, LLC,<br><br>Petitioner,<br><br>v.<br><br>TRAEGER PELLET GRILLS, LLC,<br><br>Respondent. | **REPORT AND RECOMMENDATION TO DISMISS CASE FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>**AND**<br><br>**ORDER DENYING AS MOOT (1) ROYAL MERCHANT HOLDINGS, LLC'S PETITION TO COMPEL COMPLIANCE WITH ARBITRAL SUBPOENA (ECF NO. 2), AND (2) TRAEGER PELLET GRILLS, LLC'S SHORT FORM DISCOVERY MOTION TO QUASH OR MODIFY ARBITRAL SUBPOENA (ECF NO. 12)**<br><br>Case No.  2:19-mc-00108-DB-EJF<br><br>Judge Dee Benson<br><br>Magistrate Judge Evelyn J. Furse |

On February 15, 2019, Petitioner Royal Merchant Holdings, LLC ("Royal") initiated this action against Respondent Traeger Pellet Grills, LLC ("Traeger") by filing a Petition to Compel Compliance with Arbitral Subpoena ("Petition") (ECF No. 2).  Royal petitions the Court, under 9 U.S.C. § 7 ("Section 7") of the Federal Arbitration Act ("FAA"), for an order compelling Traeger to comply with an arbitral subpoena seeking testimony and the production of documents in an arbitration to which Traeger is not a party.  (See id.)  In the Petition, Royal asserts that the Court has subject matter jurisdiction over the action because "the claims in the arbitration arise under federal law."  (Id. ¶ 5.)  Subsequently, on March 20, 2019, Traeger filed a Short Form Discovery Motion to Quash or Modify Arbitral Subpoena ("Motion to Quash"), asking the Court to

quash or modify the subpoena since it already produced documents to Royal and claims it did so based on an understanding that Royal would seek no further discovery from Traeger in connection with the arbitration (ECF No. 12).

On April 2, 2019 the undersigned[1] held a hearing on the pending Motions (ECF No. 20).  At the hearing, the undersigned raised the issue of whether the Court had subject matter jurisdiction over this action.  The undersigned ordered Royal to submit additional briefing on subject matter jurisdiction by April 5, 2019 and indicated that Traeger could respond by April 11, 2015 if it elected to do so.  (Id.)  Royal submitted a Supplemental Memorandum Regarding Jurisdiction ("Supplemental Memorandum") on April 5, 2019 (ECF No. 21).  In the Supplemental Memorandum, Royal acknowledged that the FAA does not create independent federal question jurisdiction but asserts that the Court has subject matter jurisdiction over this action because the parties are diverse, and the amount in controversy in the underlying arbitration exceeds $75,000. (Id. at 2–5.)  After receiving the Supplemental Memorandum, the undersigned ordered Royal to disclose the names and citizenship of its members since the assertion that "Royal's members are domiciled in and therefore are citizens of Florida and Tennessee" failed to allow the undersigned to assess independently the citizenship of those parties (ECF No. 22).  Royal submitted its Supplemental Memorandum Regarding Citizenship of Royal Merchant Holdings, LLC ("Supplemental Memorandum re Citizenship") on April 9, 2019 (ECF No. 23).  On April 11, 2019, Traeger filed a Notice indicating it would not file a response (ECF No. 24).

---

[1] On March 11, 2019, the District Judge referred this case to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(A).  (ECF No. 8.)

Having reviewed the Supplemental Memorandum, the other filings on the docket, and relevant case law, the undersigned finds that the Court does not have subject matter jurisdiction over this action.  Royal does not present any controlling authority that would require the Court to look to the underlying arbitration to determine the amount of controversy in this case and fails to meet its burden to show that the amount in controversy in this case exceeds $75,000.

Further, the Court finds Royal's concerns regarding enforcement of the subpoena unwarranted.  Royal would not have to enforce the subpoena in Florida, where the arbitration is taking place.  Utah law allows parties to enforce subpoenas arising from out-of-state arbitrations in state court.  See Utah Code § 78B-11-118(7) ("The court may enforce a subpoena or discovery-related order for the attendance of a witness within this state and for the production of records and other evidence issued by an arbitrator in connection with an arbitration proceeding in another state . . .").  Therefore, as set forth in more detail below, the undersigned RECOMMENDS the District Judge DISMISS this case for lack of subject matter jurisdiction.

Finally, given the undersigned's finding and recommendation to the District Judge the undersigned DENIES AS MOOT (1) Royal's Petition to Compel Compliance with Arbitral Subpoena (ECF No. 2), and (2) Traeger's Short Form Discovery Motion to Quash or Modify Arbitral Subpoena (ECF No. 12).

## RELEVANT BACKGROUND

Royal initiated this action pursuant to Section 7 of the FAA to enforce a subpoena for testimony and documents issued to Trager in an arbitration.  (See Petition, ECF No. 2.)  The arbitration involves Royal and its former attorneys, James L.

3

Ferraro and The Ferraro Law Firm, P.A. ("Ferraro").  (Id. ¶ 7; Mot. to Quash 1–2, ECF No. 12.)  The arbitration concerns an Ohio malpractice dispute between Royal and Ferraro arising out of a dismissed lawsuit that Royal brought against Traeger.  (Mot. to Quash 1, ECF No. 12.)  Trager is not a party to the arbitration.  (Id.)  The arbitration is taking place in Florida, but the subpoena at issue demanded that Traeger appear on February 1, 2019 in Salt Lake City, Utah for a hearing.  (Id.; Petition ¶ 7, ECF No. 2; Ex. A to Petition, 1/4/19 Arbitral Subpoena, ECF No. 2-2.)  The subpoena commanded Traeger to designate one or more representatives to bring certain documents to the hearing and testify on behalf of Traeger concerning those documents.  (Petition ¶ 7, ECF No. 2; 1/4/19 Arbitral Subpoena, ECF No. 2-2.)  Trager has not complied with the subpoena and moves the Court to quash or modify it.  (Petition ¶ 12, ECF No. 2; Mot. to Quash, ECF No. 12.)

Prior to the subpoena at issue, Royal issued two other arbitral subpoenas to Traeger.  (Mot. to Quash 1–2, ECF No. 12; Ex. A to Pet.'s. Resp. in Opp'n to Mot. to Quash ("Opp'n to Mot. to Quash"), 4/5/17 Arbitral Subpoena, ECF No. 15-1; Ex. C to Opp'n to Mot. to Quash, 9/7/18 Arbitral Subpoena, ECF No. 15-3.)  Trager objected to the first subpoena, which requested documents only, on the grounds that the FAA does not permit pre-hearing discovery from non-parties.  (Mot. to Quash 1–2, ECF No. 12; Ex. B to Opp'n to Mot. to Quash, Objection to Subpoena, ECF No. 15-2.)  As to the second subpoena, which sought documents and testimony relating to damages, Traeger produced thousands of pages of documents in response, along with an affidavit in lieu of live testimony.  (Mot. to Quash 2, ECF No. 12; Opp'n to Mot. to Quash 2, ECF No. 15.)  Traeger claims it made this production based on Royal's representation that

4

Traeger would not have to produce any other documents or provide live testimony in the arbitration.  (Mot. to Quash 2, ECF No. 12.)  Royal claims that Traeger did not fully comply with the parties' agreement and that it reserved its right to additional discovery. (Opp'n to Mot. to Quash 2, ECF No. 15.)

## **LEGAL STANDARD**

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, . . . which is not to be expanded by judicial decree[.]"  Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994) (internal citations omitted).  "Since federal courts are courts of limited jurisdiction, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof."  Penteco Corp. Ltd. P'ship—1985A v. Union Gas Sys., Inc., 929 F.2d 1519, 1521 (10th Cir. 1991); see also Kokkonen, 511 U.S. at 377 (stating that the burden of establishing federal jurisdiction "rests upon the party asserting jurisdiction").

"Federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,' and thus a court may sua sponte raise the question of whether there is subject matter jurisdiction 'at any stage in the litigation.' "  1mage Software, Inc. v. Reynolds & Reynolds Co., 459 F.3d 1044, 1048 (10th Cir. 2006) (quoting Arbaugh v. Y & H Corp., 546 U.S. 500, 506, 513 (2006)); see also State Farm Mut. Auto. Ins. Co. v. Narvaez, 149 F.3d 1269, 1271 (10th Cir. 1998) (stating that a court " 'must, sua sponte, satisfy itself of its power to adjudicate in every case and at every stage of the proceedings' " (quoting Tafoya v. U.S. Dept. of Justice, 748 F.2d 1389, 1390 (10th Cir. 1984))).  " 'A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the

proceedings in which it becomes apparent that jurisdiction is lacking.' " <u>Penteco</u>, 929

F.2d at 1521 (quoting <u>Basso v. Utah Power & Light Co.</u>, 495 F.2d 906, 909 (10th Cir.

1974) (emphasis in original)).

## **DISCUSSION**

Initially, Royal appeared to contend that the Court had federal question

jurisdiction in this case under 28 U.S.C. § 1331 because this case arises under the

FAA.  (Petition ¶ 5, ECF No. 2.)  However, as Royal now concedes (Supplemental

Mem. 3, ECF No. 21), the FAA does not confer federal question jurisdiction, and an

independent basis for the Court's subject matter jurisdiction must exist.  <u>See</u> <u>Moses H.</u>

<u>Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 26 n.32 (1983) (stating that the

FAA "is something of an anomaly in the field of federal-court jurisdiction" because "[i]t

creates a body of federal substantive law establishing and regulating the duty to honor

an agreement to arbitrate, yet it does not create any independent federal-question

jurisdiction . . ."); <u>Comanche Indian Tribe v. 49, L.L.C.</u>, 391 F.3d 1129, 1131 n.4 (10th

Cir. 2004) ("The FAA alone cannot confer subject matter jurisdiction on the federal

courts without an independent jurisdictional basis."); <u>Bowen v. Amoco Pipeline Co.</u>, 254

F.3d 925, 931 (10th Cir. 2001) ("[T]he FAA does not create independent federal

jurisdiction.").

Royal now argues that an independent basis for subject matter jurisdiction exists,

namely that this case satisfies the requirements for diversity jurisdiction pursuant to 28

U.S.C. § 1332.  (Supplemental Mem. 3–5, ECF No. 21.)  Royal largely bases its

argument that subject matter jurisdiction exists in this case on a case from the Southern

District of New York, <u>Washington Nat'l Ins. Co. v. Obex Grp. LLC</u>, No. 18 CV 9693 (VB),

2019 WL 266681 (S.D.N.Y. Jan. 18, 2019) (unpublished) (pending appeal, No. 19-225 2d Cir.).  In that case, the court rejected the respondents' assertion that it must " 'look through' a Section 7 petition to the citizenship of the parties to the underlying arbitration to determine the existence of diversity jurisdiction." Id., at *3.  Among other things, the court noted that the respondents cited cases involving different sections of the FAA, but that "Section 7 actions—unlike those involving Section 4 or Section 10—involve different parties than those in the underlying arbitration." Id.  The court found that looking to the underlying arbitration to determine diversity would require "the Court ignore the citizenship of the parties to the controversy actually before the Court and rely on the citizenship of parties to a different controversy." Id.  Accordingly, the court concluded that it would look to the citizenship of the parties in the Section 7 action, not the underlying arbitration, to determine whether diversity exists. Id., at *3–*4.

As to the amount in controversy, the court determined that it must look, at least in part, to the underlying arbitration to determine whether the case satisfied that requirement. Washington Nat'l, 2019 WL 266681, at *4–*5.  Comparing a Section 7 case to one for declaratory or injunctive relief, the court indicated that the amount in controversy in such cases " 'is measured by the value of the object of the litigation.' " Id., at *4 (quoting Hunt v. Wash. State Apple Advertising Comm'n, 432 U.S. 333, 347 (1977)).  Specifically, the amount in controversy equals " 'the value of the consequences which may result from the litigation.' " Washington Nat'l, 2019 WL 266681, at *4 (quoting Garanti Finansal Kiralama A.S. v. Aqua. Marine & Trading Inc., 697. F.3d. 59, 68. (2d. Cir. 2012)).  The court noted that the petitioner sought $134 million in damages in the underlying arbitration and that "[e]ven if documents responsive

to the summonses pertain to only a small fraction of that sum, the amount in controversy requirement would still be satisfied." Washington Nat'l, 2019 WL 266681, at *4. The court further noted that "the panel has already determined that the summonses seek relevant information, thus increasing the responsive documents' value." Id. Thus the court considered the monetary effect of production or lack of production on the underlying arbitration.

Washington National does not bind this Court, and Royal has not cited any binding authority relating to the manner in which a district court must assess whether independent subject matter jurisdiction exists in an action brought under Section 7 of the FAA. Royal cites two other Section 7 cases in which district courts found the requirements for diversity jurisdiction satisfied: Fed. Ins. Co. v. Law Offices of Edward T. Joyce, P.C., No. 08C0431, 2008 WL 4348604, at *1 (N.D. Ill. Mar. 13, 2008) (unpublished) and Seaton Ins. Co. v. Cavell USA, No. 3:07-CV-356 (AHN), 2007 WL 9657277, at *2 (D. Conn. Mar. 21, 2007) (unpublished). (Supplemental Mem. 4, ECF No. 21.) However, the undersigned does not find these non-binding cases persuasive or even helpful because the courts do not offer any legal citations supporting their analyses of the issue or reasoning explaining their conclusions concerning subject matter jurisdiction. Therefore, the undersigned declines to consider them. In addition, the District of Utah case that Royal cites for the proposition that the Court may "look through" the Petition to the underlying arbitration, Harman v. Wilson-Davis & Co., No. 2:16-CV-00229-CW, 2017 WL 74707, at *2–*4 (D. Utah Jan. 6, 2017) (unpublished), involved Section 10 of the FAA. That case is inapposite because Section 10 actions

involve the same parties as the underlying arbitrations while Section 7 actions do not. See Washington Nat'l, 2019 WL 266681, at *3.

Significantly, other district courts examining this issue have reached different conclusions than the court in Washington National. In Zurich Ins. PLC v. Ethos Energy (USA) LLC, No. 4:15-CV-03580, 2016 WL 4363399, at *2–*3 (S.D. Tex. Aug. 16, 2016) (unpublished), the court looked solely to the amount in controversy in the Section 7 action—as opposed to the amount in controversy in the underlying arbitration—noting that "[t]he controversy before the Court does not form the basis of the arbitration", and "[plaintiff] asserts no claim against [defendant in the underlying arbitration], and seeks nothing from [defendant] other than the production of discovery documents." Id., at *3. The court further stated that "[plaintiff] fails to show how there is any amount-in-controversy between [it] and [defendant]," and therefore concluded that the plaintiff had "not satisfied its burden in establishing the subject-matter jurisdiction of this Court." Id.

Similarly, in In re Cianflone, No. 3:14-MC-63, 2014 WL 6883128, at *1 (N.D.N.Y. Dec. 4, 2014) (unpublished), the court stated that "the controversy before the Court is not the dispute forming the basis of the arbitration. Rather, the controversy before the Court is whether the arbitration subpoena should be enforced." Id. The court then found that even assuming the diversity of the parties to the action, "no allegation or plausible indication that the amount in controversy in this matter exceeds $75,000.00." Id. (emphasis in original). Accordingly, the court concluded that "there exists no basis to conclude that 28 U.S.C. § 1332 subject matter jurisdiction exists." Id.

The court in Chicago Bridge & Iron Co. N.V. v. TRC Acquisition, LLC, No. CIV.A. 14-1191, 2014 WL 3796395, at *2 (E.D. La. July 29, 2014) (unpublished) reached a

similar conclusion as well.  In that case, the court rejected plaintiffs' contention that because they sought $1 million in damages in the underlying arbitration, this satisfied the $75,000 amount in controversy requirement.  Id.  The court noted that "[t]he plaintiffs assert no claim against [defendant], who is not a party to the arbitration, and seek nothing from [defendant] in this action other than the production of discovery documents."  Id.  Because the plaintiffs failed to "provide[] the Court with any facts that would justify a finding that the amount in controversy in this proceeding meets the jurisdictional threshold," the court concluded that "they have failed to carry their burden of establishing a valid basis for subject matter jurisdiction."  Id.

The undersigned finds the line of cases holding that a district court assesses subject matter jurisdiction in a Section 7 case based on the controversy before it, as opposed to the underlying arbitration, persuasive.  Federal courts are courts of limited jurisdiction, Penteco, 929 F.2d at 1521, and the controversy before this Court relates to the enforcement of the subpoena served on Traeger, not the underlying arbitration between Royal and Ferraro.  Further, the Washington National court provides no support or reasoning for its determination that the amount in controversy in a Section 7 case should be analyzed in the same way as a request for declaratory or injunctive relief with the court considering the monetary effect of production or lack of production on the underlying arbitration.  Therefore, the undersigned finds its conclusion that a court looks to the underlying arbitration, at least in part, to determine the amount in controversy unpersuasive, particularly given the limited jurisdiction of federal courts.  Additionally, the undersigned thinks that an analysis of the relevance of documents to the underlying arbitration—which the Washington National decision requires—to

determine whether subject matter jurisdiction exists is premature.  The Court should not have to make a determination as to the relevance of the documents sought in a subpoena—often the ultimate issue in a Section 7 case—before deciding the threshold matter of whether it has subject matter jurisdiction over the case.  Doing so puts a court in the position of prejudging the case.  If the court finds the subpoena of too little relevance to merit diversity jurisdiction, the proponent may drop the subpoena given the likelihood of the finding being used against it in the ultimate enforcement of the subpoena.  If the proponent pursues the subpoena further, the party resisting the discovery and/or the arbitration panel will certainly factor in the federal court's relevance finding.  In either situation, the court has in essence made a decision on the merits while lacking jurisdiction.  Moreover, in the reverse situation, where the recipient of a subpoena seeks a motion to quash that subpoena in federal court, it would have to concede the relevance of the subpoena to the underlying arbitration to prove jurisdiction.  Such a rule is unworkable.

Thus the undersigned finds that the Court must look to the parties and amount in controversy in this action, without reference to the underlying arbitration, to determine whether subject matter jurisdiction exists.  Applying this standard, the undersigned finds that Royal fails to meet its burden to establish subject matter jurisdiction in this case. Royal claims "the amount in controversy requirement is met because Royal seeks at least $4,187,506.95 in damages in the underlying arbitration."  (Supplemental Mem. 4, ECF No. 21.)  This assertion concerning the amount in controversy in the underlying arbitration plainly fails to establish that the amount in controversy in this case meets the jurisdictional requirement since it relates only to the amount in controversy in the

11

underlying arbitration.  Royal does not offer any facts suggesting that the amount in controversy in this case meets the $75,000 threshold.

Further, Royal also fails to meet its burden to establish diversity of citizenship. Royal, a limited liability company ("LLC"), establishes its citizenship for diversity purposes, (Supplemental Mem. re Citizenship, ECF No. 23), but does not establish the citizenship of Traeger, also an LLC.  See Siloam Springs Hotel, L.L.C. v. Century Sur. Co., 781 F.3d 1233, 1237–38 (10th Cir. 2015) (stating that "in determining the citizenship of an unincorporated association for purposes of diversity, federal courts must include all the entities' members").  As to Traeger, Royal asserts only that "upon information and belief," none of Traeger's members are citizens of the same states as Royal's members.  (Supplemental Mem. 4, ECF No. 21.)  This assertion does not allow the Court to assess independently whether the parties meet the diversity of citizenship requirement.  While Royal requested leave to conduct limited discovery of Traeger as to its citizenship if required (id. at 4 n.1), the undersigned finds this unnecessary since Royal failed to establish that the amount in controversy exceeds $75,000.

The undersigned also notes that Royal's bare allegation that the amount in controversy requirement in this case is met because the amount at issue in the underlying arbitration exceeds $4 million does not meet the standard set forth in Washington National either.  In that case, the court considered more than just the amount of controversy in the underlying arbitration in finding that the amount in controversy requirement had been met; instead, to determine if the case satisfied the amount in controversy, the court looked at the value of the documents requested in the subpoena, which the arbitration panel had already deemed relevant.  Washington

National, 2019 WL 266681, at *4.  The court ultimately concluded that the case would satisfy the amount in controversy requirement even if the responsive documents pertained to only a small fraction of the $134 million in damages sought in the underlying arbitration (id.)—much more than at issue in the underlying arbitration in this case.  Additionally, the court found significant the fact that the arbitration panel had already found the documents sought relevant, "thus increasing the responsive documents' value."  Id.

As set forth above, the undersigned disagrees with the Washington National court's conclusion that a court looks to the underlying arbitration to assess the amount in controversy in a Section 7 case.  The Washington National court also did not really explain how it valued the documents in that case other than acknowledging relevance and comparing the total at issue in the case to the jurisdictional amount.  However, even if the assumptions concerning the value of the documents in that case were warranted, the facts in this case differ significantly.  The arbitrator did not rule on the relevance of the documents sought in the subpoena currently before the Court and seems to have acknowledged the relevance of exemplar documents evidencing an individual's signature but nothing else.  (Ex. E to Opp'n to Mot. to Quash, Trans. Dec. 6, 2018 Final Hr'g at 1046:10–1047:18, 1051:13–1054:10, ECF No. 15-5.)  Further, the subpoena identifies thirteen broad categories of documents it seeks, and only one of the categories relates to the signature discussed during the arbitration.  (Ex. A to Petition, 1/4/19 Arbitral Subpoena, ECF No. 2-2.).  Here, Royal failed to provide any information concerning the potential value of the documents in the arbitration, how the documents may impact the underlying arbitration, or how the documents may impact damages

sought in that arbitration, particularly given that Traeger already produced documents relating to damages.  Thus, even if this Court adopted the <u>Washington National</u> standard, it would still lack jurisdiction.

Finally, the undersigned finds Royal's concern that it may not be able to enforce the subpoena if the Court dismisses this action without merit.  (Supplemental Mem. 5, ECF No. 21.)  Specifically, Royal claims that dismissal of its Petition would force "Royal to seek to enforce the Subpoena through a Florida court," which "would likely preclude enforcement of the Subpoena, as the Florida court would likely not have personal jurisdiction over Traeger."  (<u>Id.</u>)

Federal and state courts can both enforce the FAA.  <u>Moses H. Cone Mem'l Hosp.</u>, 460 U.S. at 25.  Further, Utah law specifically provides for the enforcement of subpoenas from out-of-state arbitrations where attendance of a witness or production is sought in Utah, as in this case.  Utah Code § 78B-11-118(7) states:  "The court may enforce a subpoena or discovery-related order for the attendance of a witness within this state and for the production of records and other evidence issued by an arbitrator in connection with an arbitration proceeding in another state."  The undersigned also notes the Revised Uniform Arbitration Act includes an identical provision, practically making enforcement in state court widely available.  Uniform Arb. Act § 17(g) (2000).  Thus, Royal can seek relief from Utah courts with respect to enforcing a subpoena, which sought production of documents and live testimony in Utah for a Florida arbitration.

In sum, federal courts have limited jurisdiction, and Royal bears the burden, as the party asserting jurisdiction, to establish the existence of subject matter jurisdiction. <u>See</u> <u>Penteco</u>, 929 F.2d at 1521.  As detailed above, Royal's assertion that this case

meets the amount in controversy requirement because the underlying arbitration involves a claim for more than $4 million in damages fails to establish subject matter jurisdiction in this case.  Therefore, the undersigned RECOMMENDS that the District Judge DISMISS this action for lack of subject matter jurisdiction.  Further, given the undersigned's finding and recommendation to the District Judge, the undersigned DENIES AS MOOT the pending Motions in this case.

## RECOMMENDATION

For the reasons set forth above, the undersigned Magistrate Judge RECOMMENDS the District Judge dismiss this action for lack of subject matter jurisdiction.

The Court will send copies of this Report and Recommendation to all parties, who the Court hereby notifies of their right to object to the same.  See 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).  The parties must file any objection to this Report and Recommendation within fourteen (14) days of service thereof.  Id.  Failure to object may constitute waiver of objections upon subsequent review.

## ORDER

Given the undersigned's conclusion that this Court lacks subject matter jurisdiction over this action and its recommendation that the District Judge dismiss the action, the undersigned DENIES AS MOOT (1) Royal's Petition to Compel Compliance with Arbitral Subpoena (ECF No. 2), and (2) Trager's Short Form Discovery Motion to Quash or Modify Arbitral Subpoena (ECF No. 12.)

DATED this 14th day of June 2019.

BY THE COURT:

EVELYN J. FURSE
United States Magistrate Judge